**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: Aqueous Film-Forming Foams (AFFF) Products Liability Litigation | **MDL No. 2873**<br><br>**This Document Relates To:**<br><br>*The Mayor and Aldermen of the City of Savannah, Georgia v. 3M Company, et al.*, No. 2:25-cv-04812-RMG |

## DEFENDANT 3M'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION TO REMAND OR, IN THE ALTERNATIVE, MOTION TO TRANSFER

Defendant 3M Company ("3M") properly removed this case to federal court. Plaintiff sued 3M and other Defendants in state court seeking damages and injunctive relief from alleged contamination of Plaintiff's drinking water supply with certain chemicals—per- and polyfluoroalkyl substances ("PFAS"). 3M removed the case to federal court under the federal officer removal statute, because some PFAS in Plaintiff's water supply stemmed from use at nearby military bases and airports of certain firefighting foams—aqueous film-forming foams ("AFFF")—that 3M made according to U.S. military specifications ("MilSpec"). That MilSpec required AFFF to contain PFAS. That means the alleged PFAS contamination at issue in Plaintiff's Complaint plausibly derived at least in part from 3M's manufacture of MilSpec AFFF. Stated another way, Plaintiff complains of 3M's conduct as a federal officer, and because 3M has a plausible federal officer defense, it can remove this case to federal court. The Court should deny Plaintiff's renewed motion to remand or, in the alternative, motion to transfer ("Motion" or "Mot.").

Plaintiff originally moved to remand primarily on the basis that its Complaint purported to disclaim AFFF-related injuries. The Fourth Circuit, however, has rejected such arguments, holding

that a plaintiff's disclaimers do not defeat federal jurisdiction when a defendant plausibly alleges that the claimed PFAS contamination stems in part from MilSpec AFFF sources. *See Maryland v. 3M Co.*, 130 F.4th 380, 392 (4th Cir. 2025). 3M's removal of this case therefore was proper because 3M plausibly alleged that MilSpec AFFF caused at least some of the alleged PFAS contamination in Plaintiff's water supply, and 3M also plausibly alleged that PFAS from MilSpec AFFF is indistinguishably commingled with PFAS from other alleged sources in Plaintiff's water supply. These allegations are sufficient for 3M to remove this case under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), which entitles 3M to a federal forum to adjudicate 3M's federal government contractor defense related to its manufacture of MilSpec AFFF.

In the instant Motion, Plaintiff raises three primary arguments in support of remand. They are meritless. First, Plaintiff argues that 3M's "charged conduct . . . has no relation whatsoever to firefighting foam supplied to the military" because Plaintiff's "case against 3M is focused on 3M's manufacture and supply of commercial PFAS products." Mot. at 3. However, Plaintiff's argument is belied by the allegations in its Complaint and common sense, which make clear that 3M's alleged contamination of Plaintiff's water supply is the charged conduct. *See City of Irondale v. 3M Company*, No. 2:24-cv-01327-AMM, 2025 WL 2419238, at *6 (N.D. Ala. Aug. 19, 2025) (denying remand where PFAS "contamination [wa]s the 'gravamen' or 'the heart of the' claim" brought by a municipality) (citation omitted). Moreover, Plaintiff's argument that the Court must consider only how Plaintiff articulates the "charged conduct" and its connection to 3M's federal activities in assessing federal officer removal ignores the liberal standard through which federal officer removal must be assessed, which requires a court to credit a defendant's theory of removal in assessing whether removal is proper. *See Maryland*, 130 F.4th at 389; *see also* Case Management Order No. 36, ECF No. 7891 at 1 ("CMO 36") (same). 3M has plausibly alleged that

the contamination for which Plaintiff seeks to recover was caused, at least in part, by MilSpec AFFF, so removal is proper, and Plaintiff's attempt to ignore or circumvent *Maryland* should be rejected.

Plaintiff next argues that 3M fails to plausibly allege that its MilSpec AFFF was "used at a military installation in the Savannah River Watershed," so the removal fails "on its face." Mot. at 12. Plaintiff further argues that even if 3M's allegations were sufficient, Plaintiff "contested the truth" of 3M's allegations, which "shifted the burden to 3M to support its factual averments by a preponderance of the evidence." *Id.* at 12–13. Plaintiff cites no Fourth Circuit authority in support of its position that 3M must prove its allegations "by a preponderance of the evidence"—a position that conflicts with binding Fourth Circuit precedent. 3M plausibly alleges that its MilSpec AFFF was used by a nearby military installation and two airports, which contributed to the contamination of Plaintiff's water. This is all that 3M must do to satisfy its burden on removal. *See Maryland*, 130 F.4th at 387–88.

Third, Plaintiff argues that 3M "cannot establish any of the elements of federal officer removal" because this Court has already determined that MilSpec AFFF is not reasonably precise "as a matter of law." Mot. at 14. This argument relates to the merits of 3M's defense, and it misreads the Court's order. Plaintiff's lengthy discussion as to the merits of why 3M cannot establish its "continued use" theory under *Boyle* is inconsistent with this Court's determination that 3M's continued-use theory implicates "material factual disputes" that "the parties will have the opportunity at trial to litigate, and the jury to decide." *In re AFFF Prods. Liab. Litig.*, 2022 WL 4291357, at *12 (D.S.C. Sept. 16, 2022). A "primary purpose[] of the removal statute" is "to have [federal-officer] defenses litigated in the federal courts." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). Plaintiff's Motion should be denied.

Finally, Plaintiff also argues in the alternative that, if this Court denies its motion to remand, it should "suggest remand of this case back to the Southern District of Georgia" because its motion to remand was fully briefed and a pending appeal may resolve certain issues related to Plaintiff's grounds for remand. Mot. at 25–26. The Judicial Panel on Multidistrict Litigation just recently determined that this action belongs in this MDL based on its factual overlap with other cases pending in this MDL. Transfer Order, No. 2:18-mn-2873, ECF No. 3536 (J.P.M.L. June 2, 2025) (transferring this action). That decision was correct when it was entered, and the number of overlapping claims pending in this MDL has since only increased. Plaintiff's alternative request should be rejected.

## BACKGROUND

Plaintiff filed this action in Georgia state court on February 5, 2025, seeking to hold 3M and other Defendants liable for allegedly causing PFAS contamination of its drinking water supply. Plaintiff, the Mayor and Aldermen of the City of Savannah, operates a water treatment plant in Savannah, Georgia. Compl. ¶ 27, ECF No. 1-1 ("Compl."). Plaintiff provides customers in Chatham County, Georgia, and Effingham County, Georgia, with drinking water drawn from the Abercorn Creek, a channel that connects to the Savannah River. *Id.* ¶¶ 27, 194. The Complaint alleges that certain Defendants, including 3M, manufactured PFAS, and that their PFAS was then used by other Defendants who generated industrial wastewater that, when it was released into the Savannah River basin from various wastewater treatment plants, resulted in the presence of PFAS downriver in the Abercorn Creek. *Id.* ¶¶ 9–11, 33–50, 184–192. Based on those allegations, Plaintiff brings tort claims to recover damages including costs of removing PFAS from its water supply; to abate the alleged nuisance and trespass; and to enjoin Defendants to remediate the PFAS. *Id.* ¶¶ 30–31, 205–258.

The Complaint alleges that the PFAS contamination in Plaintiff's water supply includes perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"). Compl. ¶ 201; *see also id.* ¶ 1 n.1. It is undisputed that PFOA and PFOS are among the same PFAS chemicals that have been used to make AFFF, including MilSpec AFFF, and for that reason are at issue in the AFFF MDL. *See, e.g.*, *In re AFFF Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018). Plaintiff's Complaint purports to disclaim damages and other relief related to AFFF and to limit the case to other industrial uses of PFAS and PFAS-containing products. *See* Compl. ¶¶ 20–22.

On March 14, 2025, 3M removed this case to federal court under the federal officer removal statute. *See* Notice of Removal ¶¶ 1–4, ECF No. 1 ("NOR"). 3M's Notice of Removal asserted that, while Plaintiff alleges that PFAS in its water supply derived from upriver wastewater treatment facilities, PFAS in the water supply just as plausibly derived from use of MilSpec AFFF at military facilities and airports near the Savannah River upriver from or in the vicinity of Plaintiff's water intakes on the Abercorn Creek. *Id.* ¶¶ 28–37. Those locations of MilSpec AFFF use include Fort Gordon, the Augusta Regional Airport, and the Savannah International Airport (which is the location of a current military installation, the Savannah Air National Guard Base, and a former military facility, Travis Field). *Id.* 3M alleged that for three decades, it produced MilSpec AFFF for the U.S. military (among other users). *Id.* ¶¶ 28–29. 3M also alleged that the AFFF MilSpec expressly required AFFF to contain "fluorocarbon surfactants" (i.e., PFAS like PFOA and PFOS). *Id.* ¶ 27 (quoting MIL-PRF-24385). 3M further alleged that it supplied MilSpec AFFF to military and other users in Georgia, such as the Augusta Airport as confirmed by 3M's sales records. *Id.* ¶¶ 28-29, 32.

3M's Notice of Removal plausibly alleged that PFAS from MilSpec AFFF use at Fort Gordon, the Augusta Regional Airport, and the Savannah International Airport could have

plausibly migrated to the Savannah River and ultimately the Abercorn Creek where Plaintiff's water intakes are located. *Id.* ¶¶ 31–34. 3M noted that the Complaint itself alleges that PFAS "'migrate through surface water and groundwater.'" *Id.* ¶ 36 (quoting Compl. ¶ 114). 3M further explained that Fort Gordon and the Augusta Regional Airport are in Augusta, Georgia and are either the same distance from Abercorn Creek as (or closer to Abercorn Creek than) the wastewater treatment facilities that the Complaint alleges to be the source of the PFAS in Plaintiff's water supply. *Id.* ¶¶ 31–32; *see* Compl. ¶¶ 187- 192. 3M also explained that the Savannah International Airport, while a few miles downriver from Abercorn Creek, is located near the Savannah River where the influence of ocean tides twice a day could plausibly carry PFAS towards Abercorn Creek and Plaintiff's water intakes. NOR ¶ 33; *see* Compl. ¶ 194. 3M further explained that Plaintiff's backup drinking water wells are located on the Savannah International Airport property, so for that reason too, Plaintiff's lawsuit involves consideration of AFFF use at that property and the extent to which it has impacted Plaintiff's water supply and relates to the damages and other relief that Plaintiff seeks. NOR ¶ 34. Finally, 3M also alleged that, "[o]nce PFAS from AFFF has migrated from military bases and/or other AFFF sites to surrounding groundwater and surface water, the PFAS would commingle with and become indistinguishable from PFAS from any non-AFFF sources." *Id.* ¶ 36.

After the parties had fully briefed and argued Plaintiff's first motion to remand, but before the Southern District of Georgia made a ruling on that motion, the Judicial Panel on Multidistrict Litigation ("JPML") transferred this action to the MDL. Transfer Order, No. 2:18-mn-2873, ECF No. 3536 (J.P.M.L. June 2, 2025). In transferring the action, the JPML concluded that transfer was warranted because this action involves a water supply already at issue in the AFFF MDL. *Id.* at 3. Plaintiff now seeks to remand this action to state court or, in the alternative, undo the JPML's

transfer and return this action to the Southern District of Georgia.

## LEGAL STANDARDS

Under the federal officer removal statute, a civil action may be removed to federal court if it is "against or directed to" "any person acting under [any] officer[] of the United States or of any agency thereof," and is "for or relating to any act under color of such office." 28 U.S.C § 1442(a)(1). A private defendant thus may remove a case by showing that (1) "it acted under a federal officer"; (2) "the charged conduct was carried out for or in relation to the asserted official authority"; and (3) the defendant "has a colorable federal defense." *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 255 (4th Cir. 2017) (internal quotation marks omitted). Section 1442(a)(1) authorizes removal of the entire case even if only a portion of the case relates to the defendant's federal work. *See id.* at 257; *see also Cnty. Bd. of Arlington Cnty., Va. v. Express Scripts Pharm., Inc.*, 996 F.3d 243, 247–248, 252 n.8 (4th Cir. 2021).

The Supreme Court has held that § 1442(a)(1) is "liberally construed" in favor of removal, *Watson v. Philip Morris Co., Inc.*, 551 U.S. 142, 147 (2007), and "should not be frustrated by a narrow, grudging interpretation," *Willingham*, 395 U.S. at 407. Section 1442(a)(1) furthers the important congressionally-adopted policy of affording federal agents a "federal forum for a federal defense." *Sawyer*, 860 F.3d at 254. Therefore, the "ordinary presumption against removal does not apply," *Cnty. Bd. of Arlington Cnty.*, 996 F.3d at 251 (internal quotations omitted), and § 1442 "mandates a liberal construction," *West Virginia ex rel. Hunt v. Caremark PCS Health, L.L.C.*, 140 F.4th 188, 194 (4th Cir. 2025) (emphasis added). Moreover, § 1442(a)(1) is "an exception to the well-pleaded complaint rule." *Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 210 (4th Cir. 2016). Actions against federal agents "may be removed despite the nonfederal cast of the complaint" so long as "the defense depends on federal law." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999).

Courts "must credit a removing defendant's theory of the case as to whether the conduct with which it has been charged is related to its federal work." *Maryland*, 130 F.4th at 389.

As in other contexts, "a defendant's notice of removal need include only . . . plausible allegation[s]" supporting removal. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014); *see* 28 U.S.C. § 1446(a). Although the "[t]he removing party bears the burden" of showing "that the actions belong in federal court," the party will "carry that burden" when its notice of removal contains a "plausible allegation that federal jurisdiction is proper." *Maryland*, 130 F.4th at 387 (quotation omitted); *accord Caremark PCS Health, L.L.C.*, 140 F.4th at 194.

## ARGUMENT

### I.    Plaintiff Seeks To Hold 3M Liable For Alleged Contamination Of Its Water Supply That Plausibly Includes PFAS From MilSpec AFFF.

#### A.    The "Charged Conduct" Is 3M's Alleged Contamination Of Plaintiff's Water Supply, Which Is The "Heart" Or "Gravamen" Of The Complaint's Allegations.

Plaintiff's Complaint makes clear Plaintiff's position that 3M is responsible for contamination of Plaintiff's drinking water. *See, e.g.*, Compl. ¶ 12 ("[T]he Defendants have jointly and continuously caused these 'forever chemicals' [PFAS] to enter the Plaintiff's source water."). However, Plaintiff attempts to avoid removal by arguing that the "charged conduct" against 3M is narrow: "the manufacture and sale of commercial PFAS products to a discrete set of 'PFAS Users,'" and "3M's simultaneous failure to warn and outright efforts to mislead these customers" about PFAS. Mot. at 6–7. According to Plaintiff, the Court should consider only how Plaintiff frames the charged conduct. That argument defies common sense and is contrary to controlling authority.

To demonstrate that the acts for which a defendant has been sued were related to its federal work, a court "credit[s] [the] *Defendant[']s* theory of the case when determining whether there is

8

such a connection or association." *Maryland*, 130 4th at 389 (internal quotations omitted). Thus, courts consider a complaint's allegations in the context of a defendant's notice of removal because a plaintiff "cannot preempt removal merely because the complaint is glossed only in state law." *Id.*; *see also Cnty. Bd. of Arlington Cnty*., 996 F.3d at 256 (rejecting plaintiff's arguments that "would elevate form over substance"). Plaintiff brought this suit against 3M for the alleged contamination of its water supply with PFAS, which is what makes the Defendants' alleged conduct "wrongful." This is made plain by Plaintiff's complaint, which alleges that each Defendant is responsible for contributing to the contamination of its water supply, *e.g.*:

- "The Defendants in this case, which belong to a variety of different industries, have all caused or contributed to these toxic chemicals invading the Plaintiff's source water supply that is used to produce drinking water." Compl. ¶ 8.

- "Defendants have jointly and continuously caused these 'forever chemicals' to enter the Plaintiff's source water. *Id.* ¶ 12.

- "PFAS pollution caused by the Defendants has jeopardized the safety of the Savannah River and Abercorn Creek, as an ongoing source of drinking water for the residents of Chatham County and surrounding areas." *Id.* ¶ 195.

- "As a result of Defendants' manufacture, use, disposal, and discharge of PFAS and/or products and waste that contain or degrade into PFAS, dangerously high levels of PFAS have been detected in the Savannah River and related tributaries and watersheds." *Id.* ¶ 199.

- "Defendants have created a public nuisance by failing to prevent the contamination of Abercorn Creek and the Savannah River and, as a direct result, Plaintiff's source water supply, water treatment plant, and related property with Defendants' PFAS." *Id.* ¶ 215.

- "Defendants have created and contributed to a nuisance by causing or contributing to cause toxic PFAS chemicals to contaminate Plaintiff's source water supply, thereby causing Plaintiff hurt, inconvenience, and harm." *Id.* ¶ 224.

Indeed, while Plaintiff brings its failure to warn claim specifically against PFAS

manufacturers, it also has brought negligence, nuisance, and trespass (among other) claims against the manufacturers as well. *See* Compl. ¶¶ 205–269. In short, "such contamination is the 'gravamen' or 'the heart of the' claim brought by [Plaintiff]." *Irondale*, 2025 WL 2419238, at *6 (citation omitted). Or, as *Maryland* put it, Plaintiff pleads "general PFAS contamination" of its water supply. 130 F.4th at 390.

None of the cases Plaintiff cites in support of its argument (Opp. at 6–9), which merely reflect the relevant test under 28 U.S.C. § 1442(a)(1), change the outcome. Plaintiff principally relies on *Anne Arundel County v. BP P.L.C.*, 94 F.4th 343 (4th Cir. 2024). But in *Anne Arundel*, the Fourth Circuit found federal officer jurisdiction to be unavailable to defendants asserting that they acted under a federal officer in producing fossil fuels where plaintiffs' claims were not premised on "any production-related activities." *Id.* at 350. Here, by contrast, 3M's alleged tortious conduct is its manufacture and sale of PFAS that allegedly contributed to the contamination of Plaintiff's water supply. 3M's plausible allegations that Plaintiff's PFAS contamination was caused at least in part by its manufacture of MilSpec AFFF for the U.S. government, *see* NOR ¶¶ 25–37, fit squarely within the conduct for which Plaintiff allegedly seeks to hold 3M liable, as *Maryland* makes clear. *See* 130 F.4th at 390 (holding that charged conduct is "general PFAS contamination" of natural resources despite disclaimer); Compl. ¶ 33 ("3M has knowingly manufactured, sold, used and/or transported PFAS or products that contain and/or degrade into PFAS in the States of Georgia and/or South Carolina, which ultimately end up in the Savannah River basin and Plaintiff's source water supply.").

In reality, Plaintiff's "charged conduct" argument is no more than a feeble attempt to resurrect its AFFF disclaimer despite binding contrary Fourth Circuit precedent. For instance, Plaintiff contends that "3M cannot establish that its supply of commercial PFAS products like

Scotchgard to specific customers . . . was in any way related to firefighting foam supplied to the government pursuant to military performance specifications." Mot. at 9. But that is the exact argument rejected by the Fourth Circuit in *Maryland*. There, the plaintiffs asserted that the court "should credit how they defined the charged conduct which, by definition, exclude[d] 3M's production and sale of Military AFFF, thus severing 3M's alleged federal connection." *Maryland*, 130 F.4th at 389. The Fourth Circuit concluded that the plaintiffs' argument "ignor[es] the unique lens through which we consider federal officer removal," explaining that a "removing defendant's theory of the case as to whether the conduct with which it has been charged is related to its federal court" must be "credit[ed]." *Id.* Thus, a court "cannot blindly accept [a plaintiff's] theory of charged conduct and the connection to 3M's federal work." *Id.* In short, even if Plaintiff were correct that the charged conduct here is merely 3M's supply of non-AFFF PFAS, there is *still* a sufficient nexus for removal because 3M plausibly alleges that any PFAS in Plaintiff's water supply, which Plaintiff attributes to non-AFFF sources, also stems at least in part from nearby MilSpec AFFF sources—a theory this Court must credit. *See id.* As *Maryland* held, that raises "important causation and allocation questions" that "belong in federal court." 130 F.4th at 392.

Plaintiff's argument was also recently rejected by the Northern District of Alabama in *City of Irondale v. 3M Company*. There, as here, the plaintiff sought to hold 3M and other defendants liable for the alleged contamination of its water supply. 2025 WL 2419238, at *1. And, as in this case, the plaintiff categorized some of the defendants as "manufacturers" of PFAS and others as "commercial users." *Id.* In denying remand, the court explained that the parties' disputes regarding the meaning of the plaintiff's allegations were "immaterial to the motion to remand because, at this stage, [the plaintiff] is no longer the master of its complaint." *Id.* at *6. Thus, the question was not what the plaintiff "alleged about the flow or connection of any PFAS pollution, but whether it

[was] *plausible*, as 3M asserts in its notice of removal, that PFAS contamination (in the form of MilSpec AFFF) . . . contributed to [the plaintiff's] alleged injury." *Id.* Here, 3M plausibly alleges in its notice of removal that the contamination of Plaintiff's water supply was caused at least in part by MilSpec AFFF. *See* NOR ¶¶ 25–37.

### B.    Plaintiff Does Not Meaningfully Distinguish *Maryland*.

In an attempt to avoid *Maryland*'s holding, Plaintiff argues that it is distinguishable because it involved allegations from two states regarding statewide contamination and because the states had filed other, overlapping lawsuits regarding AFFF contamination. Mot. at 9–10. Plaintiff asserts that *Maryland* ultimately involved conduct that was "quite broad," which is "completely different" from Plaintiff's case because Plaintiff alleges only that its drinking water is contaminated and it "has never alleged that AFFF caused or contributed to its injuries." *Id.* at 10. Plaintiff further asserts that the *Maryland* plaintiffs' "factual theories demonstrated that 3M's 'charged conduct' was broad and encompassed essentially all of 3M's PFAS products that wound up in the States' waterways," while Plaintiff's charged conduct in this action "focuses solely on specific commercial products supplied by 3M to discrete point-source dischargers," and "simply does not relate to firefighting foam sold to the federal government." *Id.* at 10–11. This purported "distinction" cannot be reconciled with the holding and rationale of *Maryland*.

As explained above, the *Maryland* court rejected AFFF disclaimers because, at the remand and removal stage, it cannot "blindly accept [plaintiffs'] theory of charged conduct and the connection to 3M's federal work." 130 F.4th at 389. The Fourth Circuit in *Maryland* did not anchor its opinion on the fact that the alleged contamination was statewide, but instead on the fact that a court "must credit a removing defendant's theory of the case as to whether the conduct with which it has been charged is related to its federal work." *Id.* Plaintiff ignores the entirety of the Fourth

Circuit's reasoning and asks this court to do exactly what *Maryland* forecloses: ignore 3M's plausible allegations and theory of removal and credit how it—and it alone—has defined the charged conduct and its connection to 3M's federal conduct in this action. But Plaintiff's attempted "artful pleading does not trump 3M's theory for removal." *Id.* at 390; *see Albritton v. A Clemente, Inc.*, 2023 WL 2447422, at *6–7 (D.N.J. Mar. 10, 2023) (ruling that the case was "for or relating to" defendants' manufacture of products for the military during World War II irrespective of plaintiff's disclaimer of relief for such products); *Nessel v. Chemguard, Inc.*, No. 1:20-cv-1080, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021) (denying State of Michigan's motion to remand case about commercial "non-MilSpec" AFFF, because "[t]he Court that ultimately hears this case will likely have to engage in a detailed fact-finding process to determine whether the injuries from MilSpec and Commercial AFFF can be distinguished," and "[i]t is entirely possible that Plaintiffs' injuries occurred from . . . MilSpec AFFF"); *see also* CMO 36 at 2 ("District courts considering federal officer removal must 'credit a removing defendant's theory of the case as to whether the conduct with which it has been charged is related to its federal work.'") (citing *Maryland*, 130 F.4th at 389); *Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 189 (1st Cir. 2024); *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 945–47 (7th Cir. 2020); *Cnty. Bd. of Arlington Cnty.*, 996 F.3d at 256.)[1] Plaintiff's Motion should be denied.

---

[1] Plaintiff also cites *Town of Pine Hill, Alabama v. 3M Co.*, No. 2.24-00284-KD-N, 2025 WL 733100 (S.D. Ala. Feb. 14, 2025), in support of its argument that the charged conduct in this action does not relate to AFFF. In recommending remand, the court in that case relied in large part on *Georgia v. Meadows*, 88 F.4th 1331 (11th Cir. 2023). *Pine Hill*, 2025 WL 733100, at *4. But *Meadows* is not controlling—it involved a former federal officer's removal of a *criminal* case, which as the Supreme Court has explained, may require "a more detailed showing" for removal given the "more compelling state interest in conducting criminal trials in the state courts." *See City of Irondale*, 2025 WL 2419238, at *4 (internal quotations omitted). And the district court in *Pine Hill* misapplied the heart or gravamen test, in any event, as 3M has explained before the Eleventh Circuit. *See Town of Pine Hill, Alabama v. 3M Co.*, No. 25-10746 (11th Cir.), ECF. 18 at 32-34.

## II.     3M Is Not Required To Offer Evidence To Support Removal.

Despite the clear caselaw explaining that a defendant need only plausibly allege the elements of § 1442(a)(1) in its notice of removal, Plaintiff argues that because it has "conteste[d] the truth of the factual allegations (or lack thereof) in 3M's notice of removal," it has raised a "factual attack on subject matter jurisdiction." Mot. at 13. It asserts that 3M therefore must "support its factual averments by a preponderance of the evidence." *Id.* Plaintiff argues that 3M has "failed to offer any evidence . . . that it even supplied MilSpec AFFF anywhere in the Savannah River Watershed," which is "fatal to 3M's removal." *Id.* Plaintiff is wrong.

The general rule is that a defendant does not need to provide any evidence at the removal stage and is not required to prove its federal defense in order to sustain removal. Instead, in considering whether removal was proper, the Court is to credit 3M's allegations in its Notice of Removal. *See Dart Cherokee Basin Operating Co.*, 574 U.S. at 89 ("[A] defendant's notice of removal need include only a plausible allegation . . . ."). Accordingly, a party removing an action to federal court need only provide "a plausible allegation that federal jurisdiction is proper" in order to carry its burden on removal. *Maryland*, 130 F.4th at 387 (internal quotations omitted); *see also* 28 U.S.C. § 1446(a) (requiring only a "short and plain statement of the grounds of removal"). That is especially true where, as here, the removing party has invoked the federal officer removal statute. *See Maryland*, 130 F.4th at 387 ("[Section] 1442(a)(1)'s promise of a federal forum is necessarily broad."). That statute is "liberally construed" in favor of removal, *Watson*, 551 U.S. at 147, and the "ordinary 'presumption against removal' does not apply," *Cnty. Bd. of Arlington Cnty.*, 996 F.3d at 251. So long as 3M "plausibly alleges" the elements of § 1442(a)(1), removal

---

Finally, the district court's conclusion in *Pine Hill* is not consistent with the Fourth Circuit's analysis in *Maryland*, which controls here.

14

is proper. *Maryland*, 130 F.4th at 388; *see also Acker*, 527 U.S. at 431 (explaining that a defendant removing under the federal officer removal statutes does not need "to win his case before it can be removed") (internal quotations omitted). As explained in 3M's Noice of Removal and further in Section III, *infra*, 3M has carried its burden to plausibly allege that the requirements of federal-officer removal are met.

Plaintiff cites no controlling authority in support of its argument that 3M must prove its case for removal "by a preponderance of the evidence," and accepting Plaintiff's argument would violate established Fourth Circuit precedent. Indeed, this Court has acknowledged that removal is assessed under a plausibility standard, determining that in personal injury actions alleging PFAS exposure, there is "at the very least, a plausible basis for alleging federal jurisdiction sufficient to satisfy [a removing defendant's] initial burden on a notice of removal" where that defendant alleges AFFF contributed in part to PFAS exposure. *See* CMO 36 at 2; *see also City of Irondale*, 2025 WL 2419238, at *6 (plaintiff's expert declaration contesting facts in notice of removal could not "overcome the reality that 3M has put forth a **plausible** case that MilSpec AFFF is a **potential** source of [the plaintiff's] complained-of injury," which is "enough" for purposes of removal") (emphasis in original).

Even if Plaintiff's proposed evidentiary standard might apply under certain circumstances, it would not apply here because Plaintiff has not offered evidence sufficient to shift the evidentiary burden to 3M. For example, in *Leite v. Crane Co.*, upon which Plaintiff relies, the Ninth Circuit determined that because the plaintiff had "raised a factual attack" on the allegations supporting federal officer removal by "submit[ing] extensive evidence outside the pleadings including military specifications, technical manuals, warning label guides, and deposition excerpts," the defendant was required to prove by a preponderance of the evidence that its government contractor

defense was "colorable." 749 F.3d 1117, 1122, 1124 (9th Cir. 2014). The Fourth Circuit has never adopted any such rule, and the federal officer removal statute does not countenance one. But, in any event, Plaintiff has not provided any "extensive evidence" and merely *states* that it "raised a factual challenge to 3M's removal theory numerous times in the transferor court," while providing a general citation to five paragraphs in its supplemental brief in support of its original motion to remand. *See* Mot. at 12. And those paragraphs provide no evidence of their own; they simply restate Plaintiff's argument that 3M did not provide evidence supporting certain allegations in its Notice of Removal. *See* Pl.'s Supp. Resp., No. 4:25-cv-00058-LGW-BWC, ECF No. 81, ¶¶ 35–40 (April 15, 2025).[2]

In any case, although not required, 3M *did* provide evidence supporting its allegations. For example, in addition to the materials cited in 3M's Notice of Removal, 3M's opposition to Plaintiff's original remand motion included an expert declaration explaining how AFFF use at Fort Gordon, the Augusta Regional Airport, and the Savannah International Airport likely contributed to Plaintiff's alleged PFAS contamination. *See* No. 4:25-cv-00058-LGW-BWC, ECF No. 55-2 ¶¶ 11–15, 19–24. The same declaration noted that sales records show 3M supplied MilSpec AFFF to Fort Gordon. *Id.* ¶ 19 (citing records produced in this MDL). 3M also provided a letter from the Department of Defense, which explained that the Defense Logistics Agency ("DLA") "is the

---

[2] None of the other cases Plaintiff cites in support of this argument change the analysis. *Grosch v. Tyco Fire Prod. LP*, No. CV-23-01259-PHX-DWL, 2023 WL 5993548 (D. Ariz. Sept. 15, 2023) is an unreported district court decision from the Ninth Circuit that relies on *Leite*, and *McNutt v. Gen. Motors Acceptance Corp. of Indiana*—which significantly predates modern authority interpreting the pleading standard under Rule 8 and the removal statute—did not involve the federal officer removal statute and held only that a party must "*allege* in his pleading the facts essential to show jurisdiction." 298 U.S. 178, 189 (1936) (emphasis added). Moreover, the "competent proof" standard adopted in *Meadows*, 88 F.4th 1331 concerned removal of a criminal matter, where a separate statutory provision requires a removing defendant to submit evidence at the removal stage. *See* 28 U.S.C. § 1455(b).

primary purchaser of AFFF fire suppressant for the United State military," only "purchase[s] products that meet the military performance specification, known as MIL-PRF-24385F," and that DLA "purchased the majority" of the AFFF, which was distributed in the "military supply system" to military sites. *See* No. 4:25-cv-00058-LGW-BWC, ECF No. 55-3 at 2, 6. The letter also notes that 3M sold MilSpec AFFF "directly" to DLA. *Id.* at 2. Thus, even if 3M were required to provide evidence supporting its allegations, it has provided sufficient evidence demonstrating it satisfies the "liberally construed" federal officer removal statute. *Cnty. Bd. of Arlington Cnty.*, 996 F.3d at 251 (internal quotations removed). Plaintiff's argument should be rejected.

## III.    The Court Has Federal Officer Jurisdiction Under 28 U.S.C. § 1442(a)(1), And Plaintiff's Attempt To Litigate The Merits Of 3M's Defense Should Be Rejected.

3M's Notice of Removal adequately alleged each element of federal officer jurisdiction. Plaintiff attempts to avoid removal by arguing the merits of 3M's defense, but those arguments are not proper at this stage and should be rejected.

### A.    This Court's Summary Judgment Order Does Not Preclude 3M's Government Contractor Defense.

Plaintiff first argues 3M cannot establish federal officer removal "as a matter of law" because of this Court's prior summary judgment order in *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, No. 2:18-MN-2873-RMG, 2022 WL 4291357 (D.S.C. Sept. 16, 2022). Mot. at 14. According to Plaintiff, because the Court determined that MilSpec was not reasonably precise "as a matter of law," 3M's removal must fail. *Id.* More specifically, Plaintiff argues that this ruling means 3M cannot establish the "acting under" requirement of federal officer removal, nor can 3M establish the "causal nexus" element of federal officer removal. Plaintiff is wrong on both counts. *Id.*

As an initial matter, the Court's summary judgment ruling made clear that 3M is entitled

to make "a full factual presentation at trial" and have its government contractor defense resolved "by a final jury verdict." *In re AFFF*, 2022 WL 4291357, at *15; *see also id.* at *12. To the extent that the Court made any rulings adverse to 3M that relate to the merits of 3M's federal defense, those rulings cannot show that 3M failed to *plausibly* allege it has met the elements of federal officer removal when the summary judgment ruling necessarily determined that such a defense is viable. The Court's summary judgment order was based on a different record and a legal standard that do not apply here, and the Fourth Circuit has explained that removal is proper even if a defense is ultimately rejected: "[n]othing in the federal removal statutes authorizes the remand of a case that has been properly removed under § 1442(a)(1) on the ground that the [defendant's] immunity defense is later rejected"—in such circumstances, a district court has "no right to decline to exercise jurisdiction over the removed action." *Jamison v. Wiley*, 14 F.3d 222, 239 (4th Cir. 1994). Thus, Plaintiff cannot rely on the Court's summary judgment decision to preclude 3M's removal where, as here (and as explained further below), 3M has sufficiently pleaded the "acting under" requirement of federal officer removal and the "for or relating to" element.

**B.    3M Has Adequately Pleaded It Was "Acting Under" A Federal Officer.**

3M's manufacture of MilSpec AFFF qualifies 3M as a "person acting under" a federal officer. 28 U.S.C. § 1442(a)(1). The "acting under" provision requires defendants to show "an effort to assist, or to help carry out, the duties or tasks" of a federal officer. *Watson*, 551 U.S. at 152. "[C]ourts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it manufactured for the government." *Sawyer*, 860 F.3d at 255; *see, e.g.*, *Marley v. Elliott Turbomachinery Co.*, 545 F. Supp. 2d 1266, 1273–1274 (S.D. Fla. 2008) (holding that the defendant was "acting under" federal authority in manufacturing and supplying products pursuant to contracts with the U.S.

Navy) (citation omitted). In such cases, the manufacturer is "help[ing] federal officers fulfill a basic governmental task that the government otherwise would have had to perform." *Caver v. Central Alabama Elec. Cooperative*, 845 F.3d 1135, 1143 (11th Cir. 2017). Accordingly, this Court and others repeatedly have held that MilSpec AFFF manufacturers were "acting under" the U.S. military in producing "mission-critical" AFFF that the federal government otherwise would have had to produce. *Ayo v. 3M Co.*, No. 18-CV-0373(JS)(AYS), 2018 WL 4781145, at *9 (E.D.N.Y. Sept. 30, 2018); *accord Nessel*, 2021 WL 744683, at *3 (W.D. Mich. Jan. 6, 2021); *In re AFFF*, No. 2:18-mn-2873-RMG, 2019 WL 2807266, at *2 (D.S.C. May 24, 2019). Plaintiff does not deny that 3M produced mission-critical AFFF for use by the U.S. military, pursuant to contracts with the military for the purchase of such products, in accordance with requirements of a MilSpec, and courts regularly conclude that the military's issuance of detailed product specifications is itself sufficient control to enable federal officer removal. *See Sawyer*, 860 F.3d at 253, 255 (defendant "acted under the Navy" in manufacturing products matching "military specifications"); *Zeringue v. Crane Co.*, 846 F.3d 785, 792 (5th Cir. 2017) (defendant "was 'acting under' the Navy" because "military specifications" showed that "the Navy exercised a sufficient degree of guidance and control" over defendant); *Ayo*, 2018 WL 4781145, at *9.

3M sufficiently alleged that it was "acting under" military direction when it manufactured AFFF conforming to detailed requirements imposed by the MilSpec, including the express requirement that AFFF contain PFAS chemicals (among other requirements regarding the design, performance, and environmental impact of AFFF). NOR ¶¶ 26–27. The military additionally tested 3M's AFFF products for conformity with the MilSpec before qualifying them for military use. *Id.* ¶ 26. 3M has alleged that its manufacture of MilSpec AFFF according to the military's detailed requirements helped to "fulfill a basic governmental task that the government otherwise would

have had to perform." *Caver*, 845 F.3d at 1143; *see Ayo*, 2018 WL 4781145, at *9. 3M has

therefore plausibly alleged the "acting under" element for federal officer removal.[3]

### C.   3M Has Adequately Pleaded This Action And Its Conduct Were "For Or Relating To" Its Manufacture Of MilSpec AFFF.

As an initial matter, Plaintiff's characterization of this element as the "causal nexus"

element is incorrect. That legal standard was superseded by congressional action in 2011, when

Congress amended the federal officer statute to add the "or relating to" phrase now in the text of

§ 1442(a)(1)'s requirement that the lawsuit must be "for or relating to" an act under color of federal

office. That amendment "broadened the universe of acts that enable federal removal . . . such that

there need only be a connection or association between the act in question and the federal office."

*Sawyer*, 860 F.3d at 258 (cleaned up); *see also Caver*, 845 F.3d at 1144 (explaining that "the hurdle

---

[3] In a footnote, Plaintiffs cite *Georgia v. Meadows*, 88 F.4th 1331 (11th Cir. 2023), but that out-of-circuit decision is both unpersuasive and distinguishable. *Meadows* involved the removal of a criminal case under the federal officer removal statute on the basis that the defendant was indicted for actions that occurred while he was Chief of Staff. *Id.* at 1336. The Eleventh Circuit concluded that remand was required because the text of the statute, which provides for removal *by* "any officer . . . of the United States" (28 U.S.C. § 1442(a)(1)), "does not apply to *former* federal officers." 88 F.4th at 1338. Plaintiffs here argue that *Meadows* compels remand because 3M no longer makes AFFF. Mot. at 16 n. 6. But the Fourth Circuit has not adopted *Meadows*' holding, which the Eleventh Circuit acknowledged was unsupported by any caselaw "in the 190-year history of the federal officer removal statute." 88 F.4th at 1342. Moreover, 3M did not remove these cases on the ground that it is or was itself an "officer"; 3M removed these cases based on different text in § 1442(a)(1) authorizing removal by "any person acting under" a federal officer. *Meadows* did not address that provision, and so did nothing to abrogate the many cases upholding removal by private defendants based on their past manufacture of military products. Courts have "decline[d] to twist the Eleventh Circuit's holding" to remand cases on the basis that private defendants "formerly acted under the actions of" a federal officer. *Goffner v. Avondale Indus., Inc.*, 2024 WL 2844542, at *4 (E.D. La. June 5, 2024); *accord Michigan v. Keely*, 2024 WL 5066093, at *2 (W.D. Mich. Dec. 11, 2024) (collecting cases). In any event, *Meadows* is also distinguishable because 3M is *still* acting under federal officers: 3M no longer makes AFFF but continues to make other MilSpec products for the federal government. Finally, applying *Meadows* as suggested by Plaintiffs would lead to the absurd result that any entity selling a product to the federal government pursuant to military specifications would have the government contractor defense evaporate after the sale was completed—a result that would undermine the very purpose of the doctrine.

erected by [the connection or association] requirement is quite low") (internal quotation marks omitted). In determining whether the requisite connection exists, a court must "credit [the removing party's] theory of the case." *Acker*, 527 U.S. at 432. The removing party need not set forth "an airtight case on the merits," as such a standard "would defeat the purpose of the removal statute." *Id.*

3M has plausibly alleged the requisite connection here. In particular, 3M's Notice of Removal plausibly alleged that the use of MilSpec AFFF it manufactured for the U.S. government would have contributed to the alleged PFAS contamination of Plaintiff's water supply. NOR ¶ 2. 3M alleged that PFAS from MilSpec AFFF used at Fort Gordon, the Augusta Regional Airport, and Savannah International Airport sites have affected Plaintiff's water supply on the Abercorn Creek. *Id.* ¶¶ 30–34. 3M also alleged that PFAS from MilSpec AFFF commingled with PFAS from other alleged sources. *Id.* ¶ 36. The parties therefore will need to litigate whether and how any portion of the alleged PFAS contamination resulted from 3M's manufacture of MilSpec AFFF, and the factfinder will need to apportion PFAS between MilSpec AFFF and any other sources. "The need to unravel such challenging questions in this case establishes that 3M's federal work is inextricably related to the charged conduct." *Maryland*, 130 F.4th at 391; *see also* Section I, *supra*.

**D.     3M Has Asserted A Colorable Federal Defense.**

A federal defense is colorable "unless it is immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous." *Moore v. Elec. Boat Co.*, 25 F.4th 30, 37 (1st Cir. 2022) (internal quotations omitted). Only a colorable federal defense is required because a defendant "need not win his case before he can have it removed." *Willingham*, 395 U.S. at 407; *see Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014) ("Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have

the opportunity to present [his] version of the facts to a federal, not a state, court.'") (quoting *Willingham*, 395 U.S. at 409).

Here, 3M adequately alleged a colorable federal government contractor defense by pleading each element of the defense under *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988). The Notice of Removal alleged that (1) 3M made PFAS-containing AFFF pursuant to a MilSpec approved by the U.S. military, (2) 3M's AFFF conformed to the MilSpec, and (3) the military knew the potential hazards of PFAS-containing AFFF yet continued to buy and use the products. *See* NOR ¶¶ 25–29, 35–43, 49–52. Indeed, this Court and others have held on numerous occasions that MilSpec AFFF manufacturers have a colorable federal defense based on such allegations. *See, e.g.*, *Nessel*, 2021 WL 744683, at *4; *In re AFFF*, 2019 WL 2807266, at *2–3; *Ayo*, 2018 WL 4781145, at *7–15; Order at 4, ECF No. 320 (D.S.C. September 27, 2019); Order at 4–5, ECF No. 325 (D.S.C. October 1, 2019).

Again relying on this Court's prior summary judgment order, Plaintiff argues that 3M cannot satisfy the first element of *Boyle*. Mot. at 18–19. Plaintiff further argues that, as a result, the "only way 3M could satisfy *Boyle*" is by invoking the continuous use doctrine. *Id.* at 19. In arguing that 3M cannot invoke a "continuous use" defense, Plaintiff seeks to litigate the merits of that defense and argues that 3M withheld information from the government, so 3M "cannot show the government used AFFF with full knowledge of its defects and risks." *Id.* at 22 (cleaned up). But Plaintiff's (meritless) attempt to dispute whether 3M can ultimately satisfy these elements of its defense is irrelevant at this stage. For removal, all that is required is for 3M to sufficiently *plead* a colorable defense. 3M has done so.

This Court's summary judgment order is fully compatible with 3M's assertion of a colorable government contractor defense under *Boyle*. Far from rejecting 3M's ability to assert a

government contractor defense, that summary judgment ruling made clear that 3M is entitled to make "a full factual presentation at trial" and have its government contractor defense resolved "by a final jury verdict." *In re AFFF*, 2022 WL 4291357, at *15; *see also id.* at *12. The Court's determination (based on an extensive record developed here in the MDL) that 3M's government contractor defense raises triable issues of fact necessarily means that the defense is at least colorable for purposes of removal based on federal officer jurisdiction, *i.e.*, 3M's defense is neither "immaterial" nor "wholly insubstantial and frivolous." *Moore*, 25 F.4th at 37. 3M is entitled to present these facts and have its federal defense decided in federal court. Indeed, the Court concluded that Defendants could potentially prove the first *Boyle* element by establishing at trial "the government's continuous use of the product . . . with full knowledge of its defects and risks." *In re AFFF*, 2022 WL 4291357, at *6–8. As the Court put it: "[w]here the government did not develop the product but subsequently purchased and used it, and by that use acquired full or substantially complete knowledge of its defects and risks, a contractor may satisfy the first prong of *Boyle* by showing that the government continued to use the product after acquiring full knowledge of its defects and risks." *Id.* at *4.

3M's Notice of Removal here plausibly alleged that the government made just such a discretionary decision to continue buying and using MilSpec AFFF for decades despite its knowledge of the alleged defects and risks of AFFF's PFAS component. NOR ¶ 49; *see id.* ¶¶ 51–52. The government in fact continued using MilSpec AFFF for decades after 3M stopped producing it around 2000, notwithstanding the EPA's announcement around the same time that PFAS in AFFF supposedly may pose the alleged environmental and human health hazards identified by Plaintiff here. *See id.* ¶ 51.

In any event, the Court's order on the merits of 3M's government contractor defense is

irrelevant to 3M's removal of this case under § 1442 because 3M was not required to prove its defense to remove these cases. Instead, 3M only needed to allege a "colorable" defense, *Willingham*, 395 U.S. at 407, based on "plausible allegation[s]," *Dart Cherokee Basin Operating*, 574 U.S. at 89; *see Cuomo*, 771 F.3d at 116. And 3M's allegations were sufficient to plead the elements of its government contractor defense for purposes of federal officer removal, regardless of any determination on the merits of 3M's defense. *See In re 3M Combat Arms Earplug Prod. Liab. Litig.*, 2020 WL 5835311, at *2–3 (N.D. Fla. Oct. 1, 2020) (upholding federal officer removals, notwithstanding same judge's prior order in the same case granting summary judgment against defendant on the merits of its defense, because the standard for federal removal is distinct from the standard for summary judgment).

Plaintiff's arguments about the strength of 3M's defense do not bear on whether removal is proper. *See Jamison*, 14 F.3d at 239. Plaintiff's Motion should be denied.

### IV.    This Court Should Not Suggest Remand Of This Action To The Southern District Of Georgia.

For the reasons explained above, removal was proper, and this action belongs in the AFFF MDL. Plaintiff argues that, if the Court declines to remand this action to state court, it should "exercise its discretion in suggesting remand of this action back to the United States District Court for the Southern District of Georgia." Mot. at 25. Plaintiff argues that taking this discretionary action would be appropriate because its original remand motion was fully briefed and the pending appeal in *Pine Hill* "*could* resolve some (but not all) of Savannah's grounds for remand." *Id.* (emphasis added).[4] Plaintiff further asserts that "virtually all of the pre-trial proceedings against

---

[4] Plaintiff asserts that if *Pine Hill* is resolved in its favor, then it "should be dispositive to this case," but, if the Eleventh Circuit reverses, then "it would not impact Savannah's other grounds for remand." Mot. at 25 n.15. Setting aside Plaintiff's desire to rely on but simultaneously disclaim the outcome of the *Pine Hill* appeal, there is no need to wait for this action to *potentially* be

3M in the Public Water System (PWS) cases in this MDL have been resolved," and Plaintiff speculates that "remaining discovery in this action" will be "unrelated to virtually every other case in the MDL." *Id.* at 25–26. Plaintiff's speculation about what *may* occur after a pending appeal or in discovery is not sufficient to disturb the Judicial Panel on Multidistrict Litigation's determination that this case belongs in the AFFF MDL.

The Panel established the AFFF MDL to centralize actions involving claims and defenses related to contamination of groundwater and drinking water supplies with PFOA and PFOS resulting from use of AFFF at military bases, airports, and elsewhere. *See In re AFFF Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018). Accordingly, the panel has transferred actions to the AFFF MDL under 28 U.S.C. § 1407, which permits transfer where cases "involv[e] one or more common question[] of fact" and where such transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). The Panel has already made that determination regarding this action. *See* Transfer Order, No. 2:18-mn-2873, ECF No. 3536 (J.P.M.L. June 2, 2025). Because this action involves a water supply that is already at issue in the AFFF MDL, the Panel determined that transfer was appropriate. *Id.* There is no reason to disturb that decision—which necessarily required the panel to conclude that transfer would promote judicial economy—particularly when plaintiff profile forms and plaintiff fact sheets submitted by two dozen plaintiffs in this MDL now assert exposure to PFAS from AFFF in the City of Savannah's drinking water.[5] Indeed, Plaintiff's Motion demonstrates the clear benefits of coordinating discovery in this action within the MDL, as every

---

resolved by an appeal where Fourth Circuit precedent is clear as to the propriety of 3M's remand. *See* Section I, *supra*. And it is Fourth Circuit precedent that is controlling in this Court.

[5] Subject to meeting and conferring with counsel for the relevant plaintiffs, 3M can make these confidential materials available for the Court's inspection upon request.

one of Plaintiff's (procedurally improper) complaints regarding 3M's supposed lack of evidence regarding 3M's record of MilSpec AFFF sales and the government's knowledge regarding the potential risks of AFFF (*see* Mot. at 12–13, 19, 24) have been thoroughly addressed in discovery that is now available to Plaintiffs. Accordingly, the pretrial coordination of this case within the MDL continues to promote efficiency of this litigation as a whole, and Plaintiff's Motion should be denied in its entirety.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion.

DATED: September 15, 2025                    Respectfully submitted,

                                            **Defendant 3M Company**

                                            /s/ *Daniel L. Ring*
                                            Daniel L. Ring
                                            Jenner & Block LLP
                                            353 N. Clark St.
                                            Chicago, Illinois  60654
                                            Tel: (312) 222-9350
                                            Fax: (312) 527-0484
                                            dring@jenner.com

                                            *Counsel for Defendant 3M Company*